1          UNITED STATES DISTRICT COURT.

2          WESTERN DISTRICT OF NEW YORK

3

4

5     - - - - - - - - - - - - - X
      UNITED STATES OF AMERICA     )        08CR157A
6                                  )
      vs.
7                                           Buffalo, New York
      JAMES G. LITZ                )        December 3, 2010
8                                           2:16 p.m.
              Defendant.
9
      - - - - - - - - - - - - - X
10    **SENTENCE**

11

12
                    TRANSCRIPT OF PROCEEDINGS
13          BEFORE THE HONORABLE RICHARD J. ARCARA
                 UNITED STATES DISTRICT JUDGE
14

15

16

17

18    AUDIO RECORDER:        Jane D. Kellog

19

20
      TRANSCRIBER:       Karen J. Bush, RPR
21                       (585) 613-4312
                         100 State Street
22                       Rochester, New York 14614-0222

23

24

25    (Proceedings recorded by electronic sound recording, transcript
      produced by computer).

1                    A P P E A R A N C E S

2

3            WILLIAM J. HOCHUL, JR., ESQ.
                      United States Attorney
4                     BY: TRINI ROSS, ESQ.
                      Assistant United States Attorney
5                     138 Delaware Avenue
                      Buffalo, New York 14202
6

7

8                     Lipsitz, Green, Scime, Cambria, LLP
                      BY:  HERBERT GREENMAN, ESQ.
9                     42 Delaware Avenue, Suite 300
                      Buffalo, New York 14202
10                    Appearing on behalf of defendant

11

12

13

14

15

16

17
      ALSO PRESENT:    MICHAEL QUARANTILLO, USPO
18

19

20

21

22

23

24

25

1                        USA VS. J. LITZ

2

3                    P R O C E E D I N G S

4                    *          *          *

5

6

7

8

9              THE CLERK:  Criminal action 2008 157 A.  United

10   States versus James G. Litz; sentencing.  Counsel, please state

11   your name and the party you represent for the record.

12              MS. ROSS:  Trini Ross for the United States, and

13   Shaun Patel from the Department of Justice Civil Rights

14   Division for the United States.

15              MR. GREENMAN:  I'm sorry.  Judge Herbert Greenman

16   for Mr. Litz.

17              THE COURT:  Are we ready?

18              MS ROSS:  Yes, your Honor.

19              MR. GREENMAN:  Yes.

20              THE COURT:  The defendant stands before the Court

21   for sentencing on his previous plea of guilty to one count of

22   deprivation of civil rights violation of 18 U.S.C. Section 242.

23   I know that counsel reviewed the report and, I assume, Mr.

24   Greenman you reviewed it with your client?

25              MR. GREENMAN:  I have, your Honor.

1                    USA VS. J. LITZ

2            THE COURT:  The Court accepts the terms and

3     conditions of the plea agreement and the plea of guilty to one

4     count of deprivation of civil rights.  I will now place the

5     presentence investigation report in the record under seal.  If

6     an appeal is filed, counsel on appeal will be permitted access

7     to the sealed report to the recommendation section.  The

8     parties have filed appropriate statements prior to sentencing

9     regarding the sentencing factors.  There is no dispute about

10    the facts contained in the report and, therefore, the Court

11    adopts these facts as its findings of fact and hereby

12    incorporates them into the record.  There is no objection to

13    the probation officer's conclusions as to the applicable

14    Guidelines.  The report recommends that the base offense level

15    under Guideline section 2H1.1(a)(3)(A) is 10.  Report also

16    recommends a six-level upward adjustment pursuant to

17    2H1.1(b)(1)(A) and (B) as the defendant was a police captain at

18    the time of the offense and used his position in the commission

19    of the offense.  The report recommends a three-level downward

20    adjustment based on acceptance of responsibility and

21    accordingly recommends the offense level should be properly

22    calculated at 12.  And the criminal history category should be

23    properly calculated as category 1.  Under this calculation, the

24    advisory Guideline range for imprisonment is 12 to 18 months.

25    As per Guideline Section 5C1.1(d), the applicable Guideline

range in zone C of the sentencing table.  The minimum term is
satisfied by a term of imprisonment or a sentence of
imprisonment that includes a term of supervised release or a
condition that substitutes community confinement or home
detention according to the schedule in subsection (e) provided
that at least one half of the minimum term is served by
imprisonment.  Advisory range for supervised release is two to
three years.  Advisory range for a fine is from 3,000 to 32,000
plus the cost of imprisonment and supervised release.  In
accordance with the Supreme Court's decision in *United States
vs. Booker* and the Second Circuit Court's decision in *USA vs.
Crosby*, this Court must consider the Guidelines but is not
bound by them.  The Court must also consider the factors in 18
U.S.C. Section 3553(a).  Now, I received a memorandum from Mr.
Greenman, and I believe that the number of letters is somewhere
around 67.  I may have miscounted, but I also received a lot of
other materials relating to the background and commendations
and accomplishments of your client.  Mr. Greenman.

MR. GREENMAN:  Thank you, your Honor.  Judge, may
it please the Court.  One of the few times maybe in my
professional career I'm at a little bit of a loss for words and
I won't be lengthy, your Honor.  And, to tell you the truth,
I'm sort of conflicted.  I'm afraid I'm going say too much and
then I'm afraid I'm going to say too little.  So, for the first

1                    USA VS. J. LITZ

2   time in many years, I actually made some notes that I probably

3   won't look at.  Judge, I think the Court has a full handle as

4   to what this case is about.  What you have here is a decorated

5   police officer of many years who basically crossed the line and

6   let his own emotions affect him in a way that was

7   impermissible.  And shortly after he was notified of this

8   investigation, he agreed to plead guilty.  And he is here to be

9   sentenced -- or six months later.  And it's a horrible time, it

10  really is.  And I don't discount, Judge, you know, the meaning

11  for this, for police officers in general.  I'm sure the Court

12  has read Mr. Litz's letter.  He wrote it himself.  It was all

13  of his own words, how he feels.  And he understands himself

14  that he has disgraced himself because he acted in a way

15  inappropriate when he was a police officer.  And he also feels

16  very strongly that he has disgraced the badge.  And those are

17  honest feelings that he has, Judge.  A man who was devoted and

18  loved what he did.  And I suggested at one point in time to Mr.

19  Litz, he may disagree with me, that I just sort of felt that

20  maybe, as I look back in retrospect maybe with 20/20 vision, I

21  thought that he had stayed on perhaps too long.  His health had

22  begun to fail.  He reacted in a way, obviously, here that was

23  improper and the question is why it all happens.  I don't think

24  anybody can ever really know the real answer other than the

25  fact that the victim of the crime is that he says he hopes some

1                    USA VS. J. LITZ

2    day to be able to meet with him and apologize in person.  To

3    the police officers with whom he served, he is sorry as well.

4    And obviously to his wonderful family, beautiful wonderful

5    family, who has suffered so much and has been so severely

6    devastated by what he did.  And I guess the question comes down

7    to, Judge, what is the appropriate sentence.  I know that is

8    why you're there, Judge, and why I'm here.  I am barred by the

9    plea agreement to advocate for anything less than a sentence

10   within the Guideline range and I won't.  I do note that and I

11   very seldom even talk about the Guideline ranges when I talk

12   about sentencing, I think you know that, Judge, the number of

13   times I appeared before you because I do believe, and as I sat

14   here before watching the sentence before me, I firmly believe

15   that you're in the best position, better than me because of my

16   feelings towards my client and better than anybody to

17   objectively impose an appropriate sentence.  The lowest end of

18   the Guidelines here is according to a zone C sentence where

19   you're able to consider a split sentence.  Obviously I ask the

20   Court to sentence him as low within the Guidelines within the

21   range set as the Court would be able to consider.

22            Judge, James Litz, I actually never met him.  We

23   have had a case maybe against him some years ago, I believe a

24   client out in the city of Tonawanda.  I never really knew him.

25   Came to know him earlier this year.  Came to know his wife,

Cindy, who, at the time, was the chief of police in the city of
Tonawanda Police Department, and his two beautiful children.
And we have talked many times.  Many times we've had
conversations of nothing as it related to this case, but just
talking of things in general.  And, you know, Mr. Litz stands
ready before you, Judge, for whatever punishment or whatever
sentence you believe is appropriate.  I would be remiss, your
Honor, if I didn't mention what has happened to him over the
last couple of months.  And I say what's happened to him, his
health and medical condition.  Because I think it's important.
And whether stress was an inducement to some of the issues that
he faces today, I don't think we'll ever know.  But he was in
relatively modest health when he came before you six months
ago.  He was never really a robust man, he is thin, gaunt a
little bit, and I began to find out things about his medical
condition that he found difficult to talk about and I think as
to all the reports and as we're getting them in and what is
happening, things were happening so quickly, I ended up
presenting to the Court three or four separate medical reports
because his condition was worsening.  What wound up happening
here, Judge, so the Court can put it in perspective, is shortly
after he pled guilty, his body started to shut down a bit and
as the Court knows, his bladder has shut down and the doctor
feels it may be irreversible, we don't know yet.  To the point

1

2   where he had to be catheterized.  I know this is all

3   embarrassing to a man who once stood proud behind the badge.

4   And not too long ago, he fell and began a series of falls at

5   home.  He broke his ribs on his left side and then he fell

6   again and broke his ribs on the right side.  And he didn't have

7   the courage to tell me about it.  But, in the past week, he

8   fell again, and looks like he broke another rib.  And the

9   question was, really, what is going on with him.  And, of

10  course, the Court notes in the past week or two he has been

11  diagnosed with multiple sclerosis, which is a degenerative

12  disease and is now progressing.  And it's an illness that he

13  had over the last couple of years that was detected, but

14  because he didn't show symptoms, they didn't do any of the work

15  with respect to what they now find with the lesions on his

16  brain and the fact that they're extended.  And I say all of

17  this, Judge, I know it sounds maybe emotional and maybe the

18  Court may feel maybe this really doesn't have anything to do

19  with what he did with respect to his crime of conviction, but,

20  you know, Judge, he is just right now stands before you, hates

21  to say it, but he is a defeated man, a sad man trying to cope

22  with all of these issues.  And I can't imagine.  He is coping

23  with the potential of going to jail, he is coping with the

24  felony conviction.  He immediately walked off his job and

25  retired.  And now he faces all of this and at a time in his

2    life where most people are trying to find his happiness, he is

3    confronting more situations as he goes on.  Through it all,

4    through it all, he has never made an excuse.  He has never said

5    to anybody, you know that I deserve forgiveness for what I did.

6    He is still the same person that he was before who says -- who

7    will stand up before you today, Judge, I suspect, I don't know

8    what he is going to say, I think what he is probably going to

9    say is that whatever happens is my fault and I accept whatever

10   you do.  Takes a special person, I guess, to be in that

11   position and not to feel sorry for himself because he refuses

12   to feel sorry for himself.  I know he is working hard at his

13   illnesses and trying to cope.  His family is trying to cope and

14   this has all been devastating.  But I think the bottom line,

15   Judge, is with all of the documents and reports and

16   commendations, and what the pre-sentence report that was

17   submitted, I think you have a pretty good picture of the person

18   that he is.  And I thought to myself, Judge, as I was walking

19   over here, it's hard as an attorney to come before a court

20   because he committed a serious crime.  And he was a police

21   officer when he did it.  And as I indicated to the Court, he

22   crossed over.  He went further than what he should have gone

23   and did something he never should have done.  And I thought to

24   myself as well that, you know, it's easy in life that when a

25   person does something that he shouldn't do, when he falls from

1                        USA VS. J. LITZ

2    grace, and his has been a pretty tough fall, Judge, it tends to

3    be easier to maybe not remember all of the good things that the

4    person has done in his life and he has done a lot of good

5    things.  I know the Court won't forget.  I don't expect you're

6    going to forgive him for what he did because there is no

7    forgiveness and there are no excuses, there just is basically

8    the time that he stands before you and ready to be sentenced.

9    I don't know what else I can say about him, Judge, other than

10   what I said in the papers.  You're right about the letters.

11   There may be more letters than I've ever submitted before and

12   all of the good things that were said about him and, frankly,

13   the heroic things he's done in his life, he never talks about.

14              THE COURT:  He never what?

15              MR. GREENMAN:  He never talks about them.  He

16   never talks about them.  He is, Judge, what he did to the

17   police officer, to the victim and to his family, that is what

18   he is today.  That is the sad thing, but I think he is a better

19   person than just that and we ask the Court to sentence him

20   accordingly.  Thank you very much.

21              THE COURT:  Mr. Litz, this is your opportunity,

22   sir, to say anything you want to say.

23              THE DEFENDANT:  Sorry, Judge?

24              THE COURT:  This is your opportunity to say

25   anything you would like to say.

1                    USA VS. J. LITZ

2              THE DEFENDANT:  Well, I looked up the word

3      remorse.  I have a good understanding of what it was.  And it

4      talks about a yearning feeling of guilt for past actions and

5      wrongs and there is another definition -- painful.  None of

6      those are strong enough.  This is life altering for me.  I gave

7      32 years to try and improve other police officers, including

8      myself, and ultimately I couldn't live up to my own standard

9      when it involved me.  So, I thought, well, all the teaching I

10     did went to waste and blew up.  But maybe it will help put a

11     period under the message that I taught that I failed.  If I can

12     fail, better be careful you don't.  Because you don't wake up

13     in the morning and say, oh, I'm going to abuse this guy or I'm

14     going choke this guy for spitting on me, you don't do that.

15     And I always thought perception is reality and when it deals

16     with your own family in an off-duty encounter, be a good

17     witness.  Train yourself to be a good witness.  Don't get

18     involved because we're human and we succumb to emotions like

19     everybody else and I didn't live up to my own standard.  This

20     is why I stand before you today in terms of apology.  I could

21     take all your time.  You got the justice department, they

22     didn't relish this and the officers that are uncomfortable at

23     best for whatever the reason I'm here today and it's me.  I'm

24     here because I didn't live up to my own standards.  Nobody else

25     put me here, but it wasn't pleasant for everybody.  I worked so

1                    USA VS. J. LITZ

2    hard for 32 years to raise that and I failed.  I failed myself.

3              THE COURT:  Ms. Ross.

4              MS. ROSS:  Your Honor, pursuant to the plea

5    agreement, the government would ask for a Guideline sentence

6    and we're not opposed to a sentence at the lowest end of that

7    Guideline range.

8              THE COURT:  You know, this was -- I spent two days

9    on this.  And I read every one of those letters and I've been

10   in this business a long time.  I was in this business as a

11   prosecutor, as a U.S. attorney, as a district attorney and now

12   as a judge.  I always thought when I became a judge, sentencing

13   people would be one of the easiest parts of the job.  I said

14   this is what I do.  I'm going to lock everybody up as much as I

15   can.  That is what I did for 20 something years.  And I went --

16   at the time of the plea in this case, I thought I had in front

17   of me one of the worst cops I ever encountered because in the

18   plea agreement there are statements about other incidents.  To

19   this date, I can't figure out what the government wants me to

20   do with those statements, but other incidents, which have, as

21   far as I know, there is nothing in my record to support any of

22   them.  You admit to them, but you also say that your client did

23   nothing wrongful, which means not illegal and not improper.  So

24   what do I have?  All this information which apparently the

25   media has had a field day with.  Making all these claims about

2    all these different things and then I read all these letters

3    and read all these commendations, and I said, my God, this man

4    is not this rogue cop that I thought I was being presented

5    with.  I didn't quite understand, and to this day I don't

6    understand, why there was a delay of two years to the time of

7    the indictment to the time it was unsealed.  I guess because

8    there was other cases under investigation.  I never seen

9    anything like that in my entire career.  That is a long time

10   where they would be held back.  I note that even when you try

11   to make a request for an adjournment to have the sentencing put

12   off until after November when there was a change in the

13   Guideline range, the government opposed it because of the

14   victim, would be unfair to the victim.  Yet, the government

15   waited two years before they unsealed the indictment, which I

16   thought was very hypocritical of the government to hold back

17   for two years the indictment and then use that as an excuse to

18   deny or take a position to deny your request for adjournment

19   for two or three months.  I just never have seen anything like

20   this in my life.

21                I looked at the letters, I read the letters and

22   they were some of the most difficult letters I ever read.  Here

23   is a man, except for this incident, which he has taken the

24   blame and he showed true remorse from the time it happened, an

25   event that happened at 1 o'clock in the morning in his house

USA VS. J. LITZ

when his daughter was apparently receiving threatening phone
calls and all of a sudden there is activity in his yard and the
victim apparently was arrested by two fellow police officers.
He goes out there and in an emotional state, from what I can
see, took out a little vengeance on that person.  No question
the victim was hurt.  I don't believe he received any hospital
treatment.  I don't believe -- I never even received a letter
from the victim.  The only thing I have seen is some other
incident that allegedly happened, which I have no proof that it
did happen, about some lady driving her car into a car,
smashing into a wall back and forth and allegedly a gun was
pulled out.  Well, I don't know what the circumstances were and
also these other instances involving other individuals.  I
don't know why it's in the plea agreement, can't figure it out.
It's not relevant conduct.  There is no proof that I have in
front of me other than to try and somehow or other, I guess,
get the Court to use that information indirectly, I guess, to
impose a higher sentence.  To show that your client was an, I
guess, a dishonorable cop.  The fact that your client has saved
people's lives 32 years, as far as I can see, a very
distinguished career.  These letters from -- he was considered
to be the chief of police, he was one of three candidates as I
understand the record, one of three candidates to be considered
for chief of police for the city of Tonawanda.  You don't get

2    there unless you've done a lot of good things and have a lot of

3    respect from a lot of people in law enforcement and these

4    people are from neighbors, I've never seen such a cross section

5    of letters in my life that show the character of this man who

6    made a bad decision, maybe emotional, maybe because he was

7    worried about his family, the shame that he has caused himself,

8    I've never seen it before to this degree.  The shame he caused,

9    he resigned from his position, which apparently he loved.  His

10   wife resigned as chief of police because of the embarrassment.

11   The poor children have suffered from all of this.  You read

12   this letter from the daughter, this letter, I read this letter

13   three times.  This letter had such an impact on me.  These are

14   real people here.  And we're all talking about one incident in

15   his own backyard at 1 o'clock in the morning.  And you would

16   think this police officer from reading some of the accounts

17   that I have read that this was a very, very terrible police

18   officer who is violating everyone's rights.  Well, I don't see

19   that in this record.  And I take issue with a lot of things

20   that have been said publically in the newspapers about this

21   man's career and his wife's career.  These people, as far as I

22   can see, everything that I have in front of me and this is what

23   we're dealing with here, we're dealing with the record, not

24   what other people say outside, what other people want to say

25   with no way to challenge anything, just put it in the paper

1                          USA VS. J. LITZ

2    that all these bad things happened.  I'm not saying something

3    may or may not, I don't have any proof that any of these things

4    happened.  I have them in the statement, in the plea agreement,

5    but I don't know what I'm supposed to do with it.  If I use it,

6    he would be entitled to a hearing and to challenge these

7    statements and you're denying those statements of any wrong

8    doing.

9              MR. GREENMAN:  That's correct.

10              THE COURT:  Not only illegality, but any

11    wrongdoing.  That is different than any illegality.  If the

12    government thought it was so serious, the government could have

13    brought the charges, but result of a plea agreement I guess it

14    was resolved not to.  Whether it could have been proven or not,

15    I don't have any idea.  But for me to be expected to use those

16    in some way to put a harsher sentence.  I want you to answer me

17    one thing.  You're saying here right now that this man deserves

18    to go to prison.  You tell me why.

19              MS. ROSS:  Your Honor, the government asks for a

20    Guideline sentence.

21              THE COURT:  Yes, a term of imprisonment.  You give

22    me one justification why you feel in this case this gentleman,

23    based on this record, his career, what he has done for this

24    community, why this man should go to prison.

25              MS. ROSS:  Because, Judge, we're talking about the

1                    USA VS. J. LITZ

2    one count indictment of which he pled guilty to.

3                    THE COURT:  How is the public going to be served

4    by this man serving one day in jail?

5                    MS. ROSS:  Judge, we're asking for justice for the

6    victim in this case.

7                    THE COURT:  Oh, I agree with that.

8                    MS. ROSS:  And the victim was inside of a police

9    car in handcuffs had been arrested by the other officers of the

10   police department when the defendant came out.  It wasn't that

11   the victim --

12                   THE COURT:  It was his own home at 1 o'clock in

13   the morning.

14                   MS. ROSS:  I understand, Judge, but the victim in

15   this case had already been arrested, had already been placed in

16   handcuffs, was in the back of a police vehicle where the

17   defendant had to come out, open the door before he could attack

18   the victim.  When he asked the fellow officers do you need

19   assistance, they said, no, we have it under control, we've

20   already arrested the perpetrators.  And there was two of them.

21   One was in one police vehicle and the other was in another

22   police vehicle.  He picked and chose, he didn't know.

23                   THE COURT:  He resigned, he has a felony

24   conviction.  The shame that this man has brought upon himself,

25   his family, the police department, what more do you want?  How

```
 1                        USA VS. J. LITZ
 2    much do you want out of his rock?  What do you see as justice
 3    here?
 4              MS ROSS:  The government is asking for a Guideline
 5    sentence.
 6              THE COURT:  You're asking for a term of
 7    imprisonment.  Let's talk in English, okay?  You're asking for
 8    a term of imprisonment.  Explain to me why the system, the
 9    Guidelines, think that justice is served by this man serving
10    one day in prison.
11              MS. ROSS:  Judge, as you told Mr. Henry here
12    earlier, because Congress has deemed it that way, because the
13    Sentencing Commission --
14              THE COURT:  The advisory Guideline, the law is not
15    black and white.  The law is not a computer.  The law is gray.
16    The law has to look at all of the facts and circumstances.  Do
17    you want me to just take all of this information, which you
18    have not challenged any of it, take all of this information and
19    just throw it away, 32 years of this man's career and just
20    throw it away?  That is what you're asking so he can go to
21    jail?
22              MS. ROSS:  No, that is not what the government is
23    asking.
24              THE COURT:  The government is asking for a term of
25    imprisonment.  I want you to explain to me why a term of
```

1                        USA VS. J. LITZ

2    imprisonment is justified under these circumstances based on

3    this record.

4            MS. ROSS:  And I think I've tried to, your Honor,

5    because in this particular situation, in the charge that the

6    defendant has pled guilty to, it's not exactly as perhaps Mr.

7    Greenman wants us to see, it's not that the victim was outside.

8            THE COURT:  I understand that.

9            Ms. ROSS:  Looking in windows.

10           THE COURT:  The man made an error.  He made a bad

11   judgment.  He was obviously, he wasn't in uniform.  He was on

12   his own property.  There is someone there, his daughter is

13   getting threats, I guess that is what I understand, no one has

14   contested that.  All of a sudden this person is on his property

15   in custody and he reacts to it.  Now, you think that is

16   irrational for a father to react that way?

17           MS ROSS:  I think it's irrational for someone in

18   law enforcement who is a seasoned police officer to open up the

19   door of a police cruiser where a perpetrator has been placed in

20   handcuffs under arrest and go in and choke him.

21           THE COURT:  I understand that.  I understand that

22   he choked him for 30 second.

23           MS. ROSS:  A man in handcuffs.

24           THE COURT:  It was a very terrible thing the

25   victim received.

```
 1                    USA VS. J. LITZ

 2              MS. ROSS:  That is why the government is asking

 3       for a Guideline sentence.

 4              THE COURT:  You're asking for a term of

 5       imprisonment.  I want you to justify for me why you feel a term

 6       of imprisonment is appropriate in this case, how the ends of

 7       justice are being served.

 8              MS. ROSS:  Judge, we would ask you to look at the

 9       3553(a) factors.

10              THE COURT:  That is what I'm looking at.  What do

11       you think I'm talking about?

12              MS. ROSS:  You're also talking about the way the

13       plea agreement was drafted and I understand that we talked

14       about this at the time of the plea, it was an unusual plea

15       agreement.

16              THE COURT:  I haven't seen anything like this in

17       almost 40 years of experience in my career.

18              MS. ROSS:  I understand.

19              THE COURT:  I don't understand it.

20              MS. ROSS:  I understand, Judge.

21              THE COURT:  The government's job is to prosecute,

22       but to see that justice is done.  That is your role.

23              MS. ROSS:  That is my understanding and that is

24       exactly what I think the government is doing by asking for a

25       Guideline sentence.  We have a victim.
```

1                    USA VS. J. LITZ

2          THE COURT:  Now, I'm going to ask you again, and

3     if you don't answer it this time, I'll assume you don't have an

4     answer or a justification for it.  Explain for me why you feel

5     a Guideline sentence of imprisonment is appropriate in this

6     case.

7          MS ROSS:  Judge, as you know, sentencing goes to

8     many things.  There are specific deterrents and general

9     deterrents.  You're talking specific deterrents about this

10    individual.  The government looks at these cases as a whole.

11         THE COURT:  You show me one other case that has

12    ever happened in western New York with facts that even remotely

13    relative to this.  Most of the time police officers are acting

14    under color of law, which he did here because he opened the

15    door, that is what I guess the color of law is here.

16         MS. ROSS:  That's correct.

17         THE COURT:  He is a father at his own property at

18    1 o'clock in the morning with two people just been arrested for

19    trespassing.

20         MS. ROSS:  Judge, he is a police officer.  He

21    knows better than an average citizen the boundaries of the law.

22         THE COURT:  Do you hear sometimes, maybe sometimes

23    emotions get the best of you when it involves your family.

24         MS. ROSS:  Judge, I don't disagree with that.  You

25    asked me a question, I'm trying to explain the government's

1           USA VS. J. LITZ

2      position.  We have a police officer who felt that he could go

3      to the car, open the door and choke a perpetrator who was

4      already under arrest and in handcuffs as the government's

5      position here is to protect society, protecting society.

6                THE COURT:  This is protecting society, one

7      isolated incident.

8                MS ROSS:  If we're talking about.

9                THE COURT:  And incidents.  I have no information

10     at all other than newspaper accounts and what's in the plea

11     agreement that these other incidents even happened.  I'm not

12     saying they didn't happen, I don't know anything that I can use

13     that I can say I'm going to give him -- I'm going to put him in

14     prison for 10 years because apparently this police officer does

15     all these things all the time because he has done it in the

16     past.

17               MS. ROSS:  That is not what the government is

18     asking.  Ten years would be a statutory maximum sentence.

19               THE COURT:  I understand that.

20               MS. ROSS:  And the government is asking for a

21     Guideline sentence.  The government is not opposed to a low end

22     of a Guideline sentence.

23               THE COURT:  And what would be a minimum?

24               MS. ROSS:  12 months.  And he could get a split

25     sentence as Mr. Greenman asked for, why he asked for the

1                        USA VS. J. LITZ

2        adjournment.

3                    THE COURT:  How is justice being served by that?

4                    MS. ROSS:  Judge, we have a victim in this case

5        and justice is being served.

6                    THE COURT:  I understand that.

7                    MS. ROSS:  Because Congress and the Sentencing

8        Commission thought for these set of facts.

9                    THE COURT:  Advisory Guidelines, the Supreme Court

10       made it clear these aren't mandatory.

11                   MS. ROSS:  Then, Judge, you can sentence the

12       defendant, obviously, as you're stating, however you feel is

13       just.  The government's position is that we agree with the

14       factors that the Sentencing Commission took into consideration

15       when they came up with the Guidelines.

16                   THE COURT:  You think the Sentencing Commission

17       considered all these factors, a man of 32 years of

18       distinguished work who has given so much of his life to this

19       community who has saved people out of harm's way.

20                   MS. ROSS:  I don't think the Sentencing Commission

21       could take into account every particular defendant.

22                   THE COURT:  That is why I'm a judge, and that is

23       why it's no longer mandatory.  We have to use common sense and

24       good judgment when the court is imposing a sentence and not

25       look at these things as black and white.  They're not black and

1                    USA VS. J. LITZ

2      white.  The Guidelines are not black and white.  They're

3      certainly something the Court has to carefully consider and I'm

4      considering them.

5                    MS. ROSS:  And that is all the government is

6      asking you to do.

7                    THE COURT:  No, you're asking for a Guideline

8      sentence.

9                    MS. ROSS:  We're requesting a Guideline sentence.

10     We understand.

11                   THE COURT:  Have you ever asked for a sentence

12     other than the Guideline sentence?

13                   MS. ROSS:  I have, your Honor.  I absolutely have.

14                   THE COURT:  You have?

15                   MS. ROSS:  In my sixteen years as a prosecutor, I

16     surely have.

17                   THE COURT:  Mr. Greenman, do you ever recall the

18     government asking for a sentence outside or below the Guideline

19     range?

20                   MR. GREENMAN:  It's unfortunate, it's never

21     happened to me.

22                   THE COURT:  A 5K.  I don't remember one time.

23                   MS. ROSS:  I absolutely have.

24                   THE COURT:  And that is what the Supreme Court was

25     concerned about with the fact that when the Guidelines were

1                    USA VS. J. LITZ

2      mandatory that they took away this thing called human element

3      in sentencing.  And this is a human element in sentencing.  And

4      that is compassion, leniency, there is mercy and there is also

5      deterrence and all the other factors the Court has to consider

6      and evaluate his case.  I cannot see how justice is served by

7      this man serving one day in jail.

8                    MS. ROSS:  Judge, the sentencing obviously is up

9      to you.  And so --

10                   THE COURT:  I appreciate you saying that.

11                   MS. ROSS:  And no, Judge, I understand your

12     position.  I'm trying to explain to you the government's

13     position.  We understand that this Court will use its wisdom,

14     as Mr. Brown said, to make the appropriate sentence as the

15     Court deems appropriate, we understand that.  But the

16     government has -- you asked the government's position, that is

17     the government's position.  You asked the reasons why, I tried

18     to articulate to the Court why.

19                   THE COURT:  Mr. Greenman could not argue for a

20     sentence lower than the Guideline sentence.

21                   MS. ROSS:  I'm sorry?

22                   THE COURT:  Mr. Greenman could not argue for a

23     lower sentence than the Guidelines then.

24                   MS. ROSS:  He could not argue for it, but I think

25     he got his point across very well.

1                    USA VS. J. LITZ

2          THE COURT:  Well, I don't know whether he got his

3     point across.  Let me just say this, again, at the time of the

4     plea, I thought Mr. Litz was probably one of the worst cops

5     I've ever been exposed to.  I've been dealing with police

6     officers my entire career.  I was in the military police many,

7     many years ago and I know one thing that is very important is

8     that the public have trust and confidence in the police and

9     what they do.  Okay, it's the most important thing.

10          MS. ROSS:  I completely agree.

11          THE COURT:  And if you don't control the police

12    officers, there is always that potential for abuse.  They're

13    out there in the street, they're enforcing the law, all kinds

14    of things happen out there.  We're in this wonderful courtroom,

15    things are very deliberate, very thought through.  When you're

16    out there in the street, things happen.  And it wasn't like a

17    situation where he is out there.  All the cases I've ever seen

18    it's always a police officer acting as a police officer.  He

19    wasn't acting as a police officer at the time.  Under color of

20    law because he had two subordinates under him, but he was

21    acting as an individual.  He was acting in an emotional level

22    because he was very upset.  And guess what?  In life we all

23    from time to time handle situations where you say, you know, I

24    really wish I had not done that.  It was wrong.  And in this

25    situation, it's also illegal and he has admitted that.  I mean,

1                    USA VS. J. LITZ

2    the shame this man has had on his family, the shame he has

3    caused himself, this is not the same person that was out there

4    as a law enforcement officer, as far as I can see, unless you

5    dispute anything that has been submitted to me.

6             MS. ROSS:  Judge, I don't.

7             THE COURT:  These letters, everything in this

8    file, I don't want anything under seal.  I want everything

9    public.  This is the information that I'm using.

10            MS. ROSS:  That's fine.  Your Honor, one last

11   point on your point.  I understand what the Court is saying and

12   I think I don't even believe that the government and the Court

13   are that far in our view of this.

14            THE COURT:  Really.  I thought we were about 180

15   degrees different.

16            MS. ROSS:  I do not believe so based on the

17   statements that you just made, based on what's happening out

18   there, what happens to law enforcement officers.  I prosecute

19   civil rights cases, my son is a New York State trooper.  I get

20   it.  I absolutely get it.

21            THE COURT:  I prosecuted civil rights cases in my

22   former life, both as a district attorney and as a United States

23   Attorney.

24            MS. ROSS:  And then you know there are cases that

25   you prosecute and there are cases that you don't.

1                    USA VS. J. LITZ

2              THE COURT:  Okay.  But there has to be something

3      called justice and justice is what's fair, what's right and

4      that is not black and white.  The Guidelines are advisory, the

5      Guidelines are helping the Court determine what a fair sentence

6      would be.  But I didn't leave my common sense and my judgment

7      and my life's experience in my Chambers when I came out here.

8              MS ROSS:  Judge, I don't believe that I left mine,

9      either.  I believe when we looked at this case and looked at

10     the different factors and obviously things that the government

11     knows.

12             THE COURT:  Here is the factors.  It's 1 o'clock

13     in the morning on his own property, there was a commotion

14     outside of his property, apparently he sees lights out there,

15     he grabs a flashlight and his wife is sleeping.  I don't know

16     whether he was sleeping or not.  He hears the commotion.  He

17     goes out there.  He sees this man in handcuffs in the car who

18     they had just arrested who was a trespasser at the time and he

19     lost it.  And he admits that.  He admits it.  It's not that he

20     ever one time said, you know, I'd do it again.  He admitted it

21     right from the very beginning that he exercised bad judgment.

22     What more do you want from a human being?  What more shame do

23     you want to cause this man and his family.  Prison?  Is that

24     what you think is fair here?  Is that what you think is just

25     and right?  Did you read all these letters?

1                          USA VS. J. LITZ

2                    MS. ROSS:  Yes, your Honor, I did.

3                    THE COURT:  And didn't have any effect on you at

4        all?

5                    MS. ROSS:  Judge, I know the circumstances of the

6        case as presented to you in the plea agreement.  I also know

7        the circumstances of the other cases as presented.

8                    THE COURT:  The other cases?  If you want to bring

9        the other cases, bring them.  Okay?  Bring them.  But don't use

10       those other cases for me.  The only reason you would be using

11       them is for me to give a higher sentence.

12                   MS. ROSS:  We're not asking for a higher sentence.

13                   THE COURT:  Then why did you put the information

14       in there anyway?

15                   MS. ROSS:  Well, Judge, for example, Mr.

16       Greenman's memorandum, he said this is why this conduct

17       happened of the case we're talking about in the indictment.

18                   THE COURT:  They deny any wrongdoing.  Not only

19       any illegality, they denied any wrongdoing, okay?  They're

20       denying there was anything wrong.

21                   MS. ROSS:  I understand.

22                   THE COURT:  And if you felt it was illegal, which

23       is a higher than just being wrong, then you should have brought

24       the charges.

25                   MS. ROSS:  I don't disagree, Judge.

1                    USA VS. J. LITZ

2               THE COURT:  But you didn't do that, but you put

3    this information out there for what reason.  I still don't

4    understand other than to prejudice this defendant and I'm not

5    buying it.

6               MS ROSS:  Well, Judge, I can assure you, we did

7    not put it out there to prejudice the defendant.  I wouldn't do

8    that.  I think I'm a better prosecutor than that.

9               THE COURT:  Well, how is he supposed to defend

10   himself with those things other than deny it?  What else could

11   he do?

12              MS ROSS:  Judge, the defendant signed the plea

13   agreement.  He knew that information was in there.  We didn't

14   force him sign the plea agreement.  He knew that information

15   was in there and we can't --

16              THE COURT:  And he denies any wrongdoing and you

17   have produced no evidence to support what's in that plea

18   agreement to this Court unless there is something here that I

19   haven't seen and I've spent hours reading all of this material.

20              MS ROSS:  Judge, under 3553(a).

21              THE COURT:  You don't have to read 3553(a) to me.

22   I read it all the time.

23              MS ROSS:  You're asking why the information is in

24   there and I think I stated this at the time of the plea when

25   the Court asked the same question.  This was information we

1          USA VS. J. LITZ

2     had.  We can't bring plea negotiations to the Court.  Obviously

3     that is prohibited by the rules.  However, it's information

4     that the government felt the Court should know about.  Mr.

5     Greenman is stating that the reason --

6               THE COURT:  What do you want me to do with the

7     information?

8               MS. ROSS:  Just take it into consideration under

9     the 3553(a) factors.

10              THE COURT:  How would I consider that?

11              MS. ROSS:  Well, Judge, that the reason the

12    defendant committed the crime he did plead to was because he

13    was emotional about what was happening to his daughter, but the

14    point of the other -- those other incidents.

15              THE COURT:  Do you deny that?

16              MS. ROSS:  Excuse me?

17              THE COURT:  Do you have any information to

18    challenge that?

19              MS. ROSS:  I don't have any information to

20    challenge that.  We just have the information that the

21    government has.  We have a victim that was already arrested in

22    the car, handcuffed, the defendant came out, opened the door

23    and choked him and I find that egregious.

24              THE COURT:  It's outrageous.  I agree with you.

25    He admits it.  How much do you want for him?

USA VS. J. LITZ

MS ROSS:  Well, that is why I said I don't believe the government and the Court are that far apart.  Because we all agree that is egregious conduct.  If the defendant was standing outside and the defendant didn't know him and he ran up to him, I wouldn't find that as egregious as a person who has already been placed under arrest, placed in handcuffs in the back of a police car with the door closed when the patrol officers say we don't need assistance, we've got it under control.

THE COURT:  He wasn't trying to assist the police officers, he was operating under a sense of anger.

MS. ROSS:  But police officers we hold to a higher standard in our society and that is how the government operates.  This is why we brought the case.  We understand people are emotional.  He is a police officer.  He has been in situations.  We expect more.

THE COURT:  He is also a human being with certain deficiencies, as we all are.  Nobody is perfect in this world.  I'm not even close to being perfect.  And I try as hard as I can.  And I make more errors, probably, than anybody else trying to make all the decisions I have to make.  This thing happened in a split second, this happened -- well, it happened in about 30 seconds.

MS. ROSS:  Judge, to open up the door of a police

1                           USA VS. J. LITZ

2      car and choke somebody that is already handcuffed and under

3      arrest is what the government finds egregious and we ask for a

4      Guideline sentence.

5                THE COURT:  Well, I guess you and I are on a

6      different wavelength, because I like to think that based on my

7      experience that I could look at these things and see what they

8      are and this is a very unfortunate situation, no question about

9      it.

10               MS. ROSS:  I would agree.

11               THE COURT:  But how much more do you want?  How

12     much more do you want to take out of a person?  Pursuant to the

13     Sentencing Reform Act of 1984, it's the judgment of the Court

14     that the defendant is hereby sentenced to a period of probation

15     for a period of two years.  While on probation, he shall not

16     commit another federal, state or local crime.  Shall be

17     prohibited from possessing a firearm, ammunition or other

18     dangerous device.  In addition, he shall not possess a

19     controlled substance.  Shall comply with the standard

20     conditions adopted by the Court and the following additional

21     conditions.  Since the instant offense occurred after September

22     13th, 1994 is related to illegal substances and the defendant

23     has no history of illegal substances, the mandatory requirement

24     for drug testing is waived.  The Court will impose a fine of

25     $10,000 on the defendant.  Interest on the fine is waived and

1          USA VS. J. LITZ

2    shall be paid within 60 days.  He shall pay to the United

3    States also the additional mandatory fee of $100, that is due

4    immediately.  Payments shall begin -- well --

5              MR. GREENMAN:  It will be paid by the beginning of

6    next week.

7              THE COURT:  And put it to some kind of finality.

8              MR. GREENMAN:  We'll have it paid by the beginning

9    of next week.

10             THE COURT:  In determining the sentence, the Court

11   has -- these are the reasons for the sentence.  In determining

12   the sentence, the Court has considered the advisory Guideline

13   range and all points raised by defendant as well as the

14   government as to what the appropriate sentence should be

15   including the advisory Guideline range.  In addition, I've

16   carefully -- and I want to repeat -- carefully considered the

17   factors in 18 U.S.C. Section 3553(a), I find the sentence

18   imposed is sufficient but not greater than necessary to comply

19   with the purposes of sentencing as set forth in 18 U.S.C.

20   3553(a).  I have imposed a non-Guideline sentence of probation.

21   The offense involved a 2003 incident where the defendant, while

22   off duty, choked an individual who was arrested for trespassing

23   in his yard at his personal residence at approximately 1

24   o'clock in the morning.  In most cases involving police

25   officers assaulting individuals being arrested, a sentence of

1                    USA VS. J. LITZ

2    incarceration would be imposed as a deterrent to other police

3    officers who engage in this type of conduct.  I am particularly

4    concerned that someone of the defendant's experience and

5    training should have known better than to act in the manner of

6    which he did.  Even if this incident involved his personal

7    residence and even if it involved allegations of threats

8    towards his daughter had been receiving anonymously, it

9    certainly would not nonetheless be appropriate for him to act

10   in the way he did and I believe he realizes that.  The

11   defendant's background indicates that he spent 32 years of

12   distinguished service to the city of Tonawanda police

13   department reaching the rank of captain.  During these 32

14   years, he has made numerous extraordinary efforts for the

15   community that he served, including successfully rescuing

16   people from house fires, the advancement of community programs

17   to combat driving while intoxicated and domestic violence.  At

18   one point in his career, he was a finalist for chief of police,

19   which, of what, three finalists, which goes to, you don't

20   become a finalist unless your background and your whole

21   professionalism was under strict review.  Obviously that is

22   worth something the Court can consider here.  The government

23   has submitted no evidence of any disciplinary action taken

24   against this defendant in the 32 years he was in the police

25   force.  The decision by the suspects to hide from the police in

the defendant's yard at approximately 1 a.m. in the morning
appears to be a mere coincidence.  No question he was off duty
at the time and may have -- well, not diminishing how grossly
disproportionate his response was to the situation, I find the
situation was more likely an extreme response by a homeowner
than an intentional or planned effort to exploit his status as
a police officer.  I find the support for this view from the
anguish he has caused his family, his wife's decision to retire
from her position as chief of police, and the shame he has
caused his whole family, as well as the police officers.  It's
certainly something that is not typical of most cases that I
have.  At this point, I note that the only reliable evidence
that the government has chosen to bring to my attention
suggests this incident was an isolated incident that would be
consistent with the distinguished career of Mr. Litz and lack
of any disciplinary history.  It's also consistent with the
extraordinary numbers of letters that I have received from
chiefs of police, community leaders, neighbors and friends.
The government has insisted on suggesting in the plea agreement
other alleged incidents involving -- that should effect the
sentence, I guess, the Court should give today.  I have denied
that information of other instances.  I've chosen -- the
government has chosen neither to prosecute those incidents or
bring forth any evidence supporting them.  Given the

1                    USA VS. J. LITZ

2   government's decision not to submit any credible evidence

3   supporting those incidents, I cannot go along with the

4   implication by the government or the news media this is a case

5   involving a rogue cop.  I also will find that probation will

6   sufficely deal with this.  The defendant is presently in a very

7   poor state of health and that appears to be worsening.  And

8   with respect to the background, Mr. Greenman has submitted

9   medical background that has not been contested.  He is at

10  complete loss of hearing in one ear, that is he seeking

11  treatment for diabetes, high blood pressure, high cholesterol,

12  urological issues, and also it appears to me from the record

13  here he sustained two back injuries during the course of his

14  career.  He has sustained severe nerve damage to his right

15  foot.  He has had two heart attacks.  He has a tumor in his

16  neck that has affected his motor nerves and has caused

17  impartial use of his left arm.  I further note that the

18  incident in question occurred in 2003.  That doesn't in any way

19  at all diminish the seriousness of it, but I also note that

20  there is a diagnosis recently of some brain lesions that

21  strongly suggest a case of multiple sclerosis.  Mr. Greenman

22  has also submitted to me information that he also has a number

23  of broken ribs.  Reviewing the circumstances in totality, I do

24  not again wish to minimize the conduct, but I see no indication

25  that the defendant is a danger to the community in the present

1                          USA VS. J. LITZ

2    condition that the public needs to be protected from any

3    further crimes by the defendant.  A term of probation will be

4    an appropriate sentence to reflect the seriousness of the

5    offense, I believe to promote respect for the law, to provide a

6    just and adequate sentence.

7              I also want to do something that I've only done

8    very rarely.  I want to read something to you.  This is the

9    recommendation section of the probation officer, who is not an

10   advocate, who has looked at all of the facts in the case.  The

11   government has chosen to -- this is, I'll let you look at the

12   whole recommendation, which I don't normally do, but there is

13   one paragraph in here that I'm going to read and I don't think

14   I've ever done this before:  The government has chosen to

15   include three other instances where it's alleged that the

16   defendant used excessive force while on duty.  One of these

17   incidents occurred in 2005, and the other two occurred in 2009.

18   The government has not charged the defendant in any of these

19   incidents and the defendant has not admitted to any of them.

20   As a result, this officer has not considered these allegations

21   at all in formulating this recommendation.  This defendant

22   served as a city of Tonawanda Police Department from 1978 until

23   his retirement in 2010.  It is clear that this ordeal has

24   caused great anguish to the defendant's family to the point

25   where the defendant's wife has retired from the chief of police

1                    USA VS. J. LITZ

2      of Tonawanda to be with her family.  The defendant is in very

3      poor health, which appears to be worsening, and is taking

4      medication for anxiety.  Most recently an MRI scan indicated

5      the defendant is most likely suffering from multiple sclerosis.

6      In most cases involving police officers assaulting individuals

7      being arrested, a sentence of incarceration would be

8      recommended in order to deter law enforcement officers from

9      engaging in this type of conduct.  However, considering the

10     serious, extremely serious nature of the defendant's health,

11     this officer does not believe a sentence of incarceration would

12     be appropriate.  As a result, it is the officer's belief that a

13     sentence of probation with a significant fine is adequate.

14              Now, that is from the probation office, which I

15     think is very consistent with the sentence I imposed.  You have

16     the right to appeal this sentence if you feel the Court

17     misapprehended its authority or imposed an illegal sentence.

18     However, you did waive your right to appeal.  If you feel that

19     waiver is not a valid waiver, you may take that issue to the

20     Second Circuit Court of Appeals.  Anything further?

21              MS. ROSS:  Nothing to dismiss.

22              THE COURT:  Mr. Greenman.

23              MR. GREENMAN:  No, thank you very much, your

24     Honor.

25              THE COURT:  The Court will be in recess.

1

2

3

4                    CERTIFICATE OF TRANSCRIBER

5

6      I certify that the foregoing is a correct transcript from

7   the official electronic sound recording of the proceedings in

8   the above-entitled matter.

9

10  S/ Karen J. Bush, RPR

11  Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25